## Schrum's Estate.

*Decedent's estate—Contracts—Apprenticeship—Personal service obligation—Impossibility of performance.*

In an appeal to the Orphans' Court from an auditor's report it appeared that a sum of money had been set aside by the auditor from the decedent's estate to indemnify the poor district against liability under an indenture of apprenticeship entered into between the directors of the poor and the decedent. The contract was for the nurture and education of a boy until he should become 20 years of age. The decedent died before the boy attained that age.

Such a contract, contemplating as it does, services of a personal character, does not survive the death of either party, and it was error for the auditor to charge the decedent's estate with the support of the boy until he should reach the age of twenty.

If a contract for personal service becomes impossible of performance because of a cause outside the control of the parties, it is discharged.

Argued April 12, 1927. Appeal No. 181, April T., 1927, by exceptant from order of O. C. Mercer County, October T., 1925, No. 20, in the Estate of Sylvester J. Schrum, deceased. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Exceptions to auditor's report. Before McLAUGHRY, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions. Exceptant appealed.

*Error assigned* was the decree of the court..

*W. J. Whieldon,* and with him *J. D. Trax,* for appellant.—The obligation of the contract of apprenticeship was discharged by the death of the decedent: Homan v. Redick et al., Exrs., 149 N. W. 782; (L. R. A. 1915 C., page 601); Lacy v. Gettman, 119 N. Y. 109; (21 L. R. A. 917); 13 Cyc. p. 642, sec. 717; Blakely v. Sousa, 197 Pa. 305; Ward v. Vance, 93 Pa. 499; Scully v. Kirkpatrick, 79 Pa. 324; Dixon v. Breon, 22 Pa. Superior Ct. 340; Wertz v. Klinger, 25 Pa. Superior Ct. 523.

*T. A. Sampson,* for appellee.—The obligation of the contract of apprenticeship should be charged upon the decedent's estate: Stumpf's Appeal, 116 Pa. 33; Davidson v. Reeves, 8 Times L. R., 391; Billings' Appeal, 106 Pa. 558.

OPINION BY HENDERSON, J., July 8, 1927:

This case arises out of an indenture of apprenticeship entered into September 5, 1910, between the Directors of the Poor of the County of Mercer, and James Schrum and Mary Schrum, by which the said Directors placed "Ellsworth Jennings Schrum, a poor child of said county, apprentice to James and Mary Schrum of Sharpsville, Pa., in said county, with them to dwell and serve from the day and date hereof, until the full end of term of twenty years, and three months during all which term the said Ellsworth Jennings Schrum shall faithfully serve in all lawful business, according to his power and ability, and honestly and obediently in all things demean and behave himself towards James and Mary Schrum," and the said James and Mary Schrum covenanted for their executors and ad-

ministrators that they would instruct or cause to be instructed in useful employment the said apprentice and give him at least three months' schooling in each year, and that they would provide sufficient food, apparel, lodging, and other necessaries and that "he be not in any wise a charge or chargeable to the said county or the inhabitants thereof, during the said term," at the expiration of which the parties of the second part were to give to the said apprentice "two good and comfortable suits of clothes, one whereof shall be new." The agreement presumably was entered into under the provisions of the third section of the Act of March 22, 1850, authorizing the erection of a poor house in Mercer County which statute provided for the election of three Directors of the Poor and of the house of employment for the County of Mercer, who by the third section of the Act were created a body corporate and in that capacity permitted "to bind out apprentices, so that such apprenticeship may expire, if male, at or before the age of twenty-one, if females, at or before the age of eighteen years, such poor children as shall come under their notice, or as may now be bound apprentices by the overseers of the poor." James Schrum died intestate August 8, 1924; Mary Schrum having departed this life several years before. Settlement of the estate of the former having been made by his adminstrator, an auditor was appointed to make distribution of the balance shown to be in the administrator's possession. At the hearing before the auditor, application was made by the Directors of the Poor for the setting aside a portion of the estate sufficient to indemnify the district against liability for the maintenance of the said Ellsworth Jennings Schrum during his minority, whereupon the auditor in his report apportioned for that purpose the sum of $1,825, which report was subsequently confirmed by the Orphans' Court after exception taken on

behalf of the heirs of the said decedent. The question for consideration is therefore whether the contract of apprenticeship survived after the death of Sylvester J. Schrum, one of the masters to whom the minor child was apprenticed? That the relationship of master and apprentice is personal, we think cannot now be doubted. The former is selected with reference to his individual qualifications. He assumes in a large measure the rights and responsibilities of a parent. His condition in life, his habits, his temperament, are considerations bearing on the propriety of the contract. The apprentice is not a chattel to be disposed of as an article of commerce. Suitable nurture and education of the apprentice is the only justification for the creation of such a relation. Service by the apprentice, and nurture and instruction from the master are the inducements supporting the agreement, and if by reason of a cause beyond the control of the parties the contract becomes impossible of performance, it is discharged. At common law such an agreement is not assignable. It was decided in Baxter v. Burfield, 2 Strange 1266, that the binding is to the man, to learn his art, and serve him, without mention of executors, and that the purpose of the indenture is a mere personal trust on the part of the master, the apprentice being bound on account of his ability and integrity in his profession. It was said in Commonwealth v. King, 4 Sergeant & Rawle 109, in an opinion by GIBSON, J., that this case has ever since been considered as having settled the law, and in the latter case it was held that the reason why the master should not assign applies with equal force to a transmission of his power to his executor which is an assignment by operation of law. It is a doctrine of the common law that the person of a man is not transferable: I Mass. 172; 8 Mass. 299; Commonwealth ex rel. Crispin v. Jones, 3 Sergeant & Rawle 158; Commonwealth v. King, 4 Sergeant &

Rawle, supra. When therefore death intervenes to prevent the master from performing the service which he undertook, his obligation is not cast on his estate in the absence of an agreement investing his executor or administrator with such right and liability. The agreement for nurture and instruction rests on the promise to serve and when these obligations cease to be mutual, the parties are released. It will be observed that the contract we are considering does not invest executors or administrators with authority to assign the contract and continue the relation of master and servant. It is necessary therefore to show some statutory authority if this proceeding can be sustained. The second section of the Act of April 11, 1799, I Purdon 339, provides that when any master or mistress shall die, before the term of apprenticeship shall be expired, the executors or administrators of such master or mistress shall have the right to assign over the remainder of the term, but this only applies where the term of the indenture extended to executors and administrators, and we have seen that there is no such provision in the contract under consideration; and such assignment can only take effect when approved by the Court of Quarter Sessions in the county where the master or mistress lived. On the state of facts exhibited by the record, the conditions do not exist which make the Act of 1799 applicable, and if it were, it is only effective in behalf of and at the election of the master's legal representative. Reliance is placed on that part of the contract in which the second parties bound themselves and their heirs and executors to save the poor district harmless from liability to maintain the apprentice, but this was an incident of the contract. It is presumed to have been in contemplation of the parties that the minor might not live to attain his majority and that the masters might not survive to that period, and as we view the contract it

is not susceptible of a division which would require
its performance in part after the death of the masters
when it ceased to be effective as to the apprentice. The
learned court below relied on Stumpf's Appeal to sus-
tain the order made. When the situation of the parties
concerned and the inducement to the contract in that
case are considered there is no indication that the obli-
gation was intended to be strictly personal. At the
time the agreement was entered into a criminal prose-
cution for fornication and bastardy was pending in
the Court of Quarter Sessions and an action for breach
of promise of marriage had been brought in the Court
of Common Pleas. The consideration for entering into
the agreement by the testator was that Adelaide
Stumpf, the mother of the child, would discontinue the
prosecution in the Court of Quarter Sessions and
would settle and discontinue the action for breach of
promise, and would acknowledge that she had re-
ceived full satisfaction and settlement of the same, and
that she would make no further claim or demand
therein, and that she released and absolved the defend-
ant from all claims and demands that she may have had
or had at that time. It thus appears that full con-
sideration passed to the obligor for his agreement to
support and maintain the child and to see that it was
well taken care of. The mother was responsible for
the care of her child and she had what she alleged to
be a valid claim against Dr. Flentje. She was to be
relieved by the contract from further liability to sup-
port her child. The inducement to that undertaking
on the part of Dr. Flentje was that he escaped the
peril of the criminal prosecution and the action in the
Court of Common Pleas. This he deemed at the time
adequate consideration for his undertaking and there
was no more reason for releasing him than if he had
been paid a full consideration in money at the time he
signed the agreement. The contract was in no sense

one of a special nature arising out of the relation of the obligor to Adelaide Stumpf. A stranger to the facts of the case could have bound himself on a valid consideration to do what Dr. Flentje undertook to do. We are of the opinion that because of the death of the survivor of the masters named in the contract, that instrument ceased to be a binding obligatio(n. It follows that the order of the Orphans' Court is erroneous (and is therefore reversed with a procedendo. Costs of this appeal to be paid out of the estate.